**SPERRY INTERNATIONAL TRADE, INC., Plaintiff-Appellant,**

v.

**GOVERNMENT OF ISRAEL, Defendant-Appellee.**

**SPERRY INTERNATIONAL TRADE, INC., Petitioner-Appellee,**

v.

**GOVERNMENT OF ISRAEL, Respondent-Appellant.**

Nos. 1165, 1166, Dockets 82–7121, 82–7181.

United States Court of Appeals, Second Circuit.

Argued April 29, 1982.

Decided Sept. 3, 1982.

Robert B. Davidson, New York City (Nona J. Barnett, Norman Solovay, David R. Foley, Baker & McKenzie, Holtzmann, Wise & Shepard, New York City, on the brief), for plaintiff-appellant.

Jeffrey A. Fillman, New York City (Morris A. Wirth, Marshall H. Fishman, Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, on the brief), for defendant-appellee, respondent-appellant.

Norman Solovay, New York City (David R. Foley, Aron Broches, Robert B. David-

son, Holtzmann, Wise & Shepard, Baker & McKenzie, New York City, on the brief), for petitioner-appellee.

Before MANSFIELD and KEARSE, Circuit Judges, and CABRANES,\* District Judge.

KEARSE, Circuit Judge:

The principal question on these appeals concerns the power of arbitrators to make certain rulings, in light of a prior decision of this Court in this litigation reversing the district court's granting of a preliminary injunction on the ground that the moving party had failed to prove irreparable injury. In No. 82–7181, respondent-appellant Government of Israel ("Israel") appeals from an order of the United States District Court for the Southern District of New York, Milton Pollack, *Judge,* confirming an arbitration award in a proceeding between Israel and petitioner-appellee Sperry International Trade, Inc. ("Sperry"). Because we conclude that the award was within the arbitrators' powers and did not disregard the law, we affirm. On the basis of this affirmance we also affirm No. 82–7121.[1]

## FACTS

The relevant facts in this continuing controversy between Sperry and Israel are more fully discussed in our previous opinion in *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8 (2d Cir. 1982) ("*Sperry I*"), and Judge Pollack's opinion at issue here, reported at 532 F.Supp. 901 (S.D.N.Y. 1982). Familiarity with both opinions is assumed.

In July 1978, Sperry Rand International Trade, Inc., the predecessor of appellee Sperry (both referred to as "Sperry"), and Israel executed a contract (the "Contract") requiring Sperry to design and construct a communication system for the Israeli Air Force. As contemplated by ¶ 59 of the Contract, Sperry caused Citibank, N.A. ("Citibank") to open a clean irrevocable letter of credit in Israel's favor for a sum eventually set at approximately $15 million. Paragraph 59 gave Israel the right to draw on this letter of credit, to the extent of its payments to Sperry, upon presentation of a sight draft and Israel's own "certification that it is entitled to the amount covered by such draft by reason of a clear and substantial breach" of the Contract. The provision for payment in the letter of credit itself stated, somewhat differently, as follows:

FUNDS UNDER THIS CREDIT ARE AVAILABLE TO YOU AGAINST YOUR SIGHT DRAFT DRAWN ON US ... PROVIDED SUCH DRAFT IS ACCOMPANIED BY YOUR CERTIFICATION THAT YOU ARE ENTITLED TO THE AMOUNT COVERED BY SUCH DRAFT BY REASON OF NONDELIVERY IN ACCORDANCE WITH CONTRACT NO. 6977 OR BY REASON OF DENIAL OF THE NECESSARY LICENSES.

Paragraph 45 of the Contract provided that all Contract disputes that could not be resolved by negotiation were to be submitted to arbitration in accordance with the rules of the American Arbitration Association.

On August 3, 1981, Sperry initiated arbitration proceedings, seeking a declaration

---

\* The Honorable José A. Cabranes, of the United States District Court for the District of Connecticut, sitting by designation.

1. In No. 82--7121, which was consolidated for argument with No. 82--7181, Sperry appeals from an order of the United States District Court for the Southern District of New York, John M. Cannella, *Judge,* vacating an order of attachment obtained by Sperry in New York State Supreme Court on the proceeds of a letter of credit then held by Citibank, N.A., for Israel's account. Argument before Judge Cannella on Israel's motion to vacate the attachment took place prior to argument on Sperry's

motion before Judge Pollack for confirmation of the arbitration award. In argument before Judge Cannella, Sperry conceded that if the arbitration award were confirmed, the attachment would become "essentially moot and unnecessary." (Transcript at 3.) Under New York law a party seeking maintenance of an attachment order has the burden of proving, *inter alia,* "the need for continuing the levy." N.Y.Civ.Prac.Law § 6223(b) (McKinney 1980). Since we affirm the confirmation of the arbitration award, which places the letter of credit proceeds in escrow, there is no need for the attachment order with respect to them.

that Israel had breached its contractual obligations and demanding damages of approximately $10 million. Sperry alleged that its attempts to perform its obligations under the Contract had been seriously and substantially frustrated by wrongful actions and inactions of Israel. Israel denied Sperry's allegations and asserted eleven counterclaims, claiming, *inter alia,* nonperformance of the Contract by Sperry.

On September 11, 1981, Sperry instituted suit in the district court to compel arbitration and to enjoin Israel from drawing on the letter of credit pending a decision by the arbitrators. The district court enjoined Israel from making the certification that would enable it to draw on the letter of credit, "pending an early ruling by the arbitrators" as to "whether it is equitable and proper in the circumstances that Israel shall or shall not draw on the letter of credit." On January 21, 1982, we reversed the district court's order granting the preliminary injunction because Sperry had made no showing that it would be irreparably injured in the absence of such an injunction. *Sperry I.* We declined to express a view as to the merits of the controversy. *Id.,* 670 F.2d at 11 & n. 4. By order dated January 25, we issued our mandate immediately.

On January 27, 1981, Israel furnished Citibank with a sight draft and certification acceptable to Citibank for drawing down the letter of credit, and requested Citibank to transmit the proceeds to an account at another bank in New York. On January 31, however, before the proceeds had been transmitted, Sperry obtained an *ex parte* order of attachment in New York State Supreme Court. Israel removed the action to federal court pursuant to 28 U.S.C. § 1441(d) (1976) and moved to vacate the order of attachment; Sperry cross-moved to confirm the attachment. Argument on these motions was scheduled for February 9, with the expectation that by that time the arbitrators would have ruled on the letter of credit question. On February 8, the arbitration panel held its first hearing and considered Sperry's motion to require Israel to withdraw its certification and demand for payment, and to enjoin it permanently from drawing down the letter of credit. Early on the morning of February 9, the arbitrators made their award on these issues (the "Award"), ordering that the proceeds of the letter of credit be held in an escrow account in the joint names of Israel and Sperry.[2]

2. The Award provided, in relevant part, as follows:

> Upon the motion of [Sperry], in an arbitration before this Tribunal commenced by a Demand for Arbitration dated August 3, 1981 (as amended), for injunctive relief with respect to a Letter of Credit (no. WCG-150297) purchased by [Sperry] from Citibank, N.A., or the proceeds thereof, and for other relief, and upon hearing and considering the arguments presented and the large number of documents submitted (directly or, during the month prior to the hearing, through the American Arbitration Association) on behalf of [Sperry] and [Israel] in favor of and in opposition to such injunctive and other relief;
>
> Now, upon due consideration, the arbitrators order as follows:
>
> 1. The proceeds of said Letter of Credit shall be paid into an escrow account ("Escrow Account") in the joint names of [Sperry] and [Israel] with such bank or other entity in the United States of America as shall be agreed upon in writing by [Sperry] and [Israel] prior to the release of such proceeds by Citibank, N.A. or, in default of such agreement, with Citibank, N.A.

> 2. [Sperry] and [Israel] shall maintain the Escrow Account in their joint names as aforesaid and the moneys or other investments standing to the credit thereof, including all interest or other income which may be earned thereon, shall not be withdrawn or transferred until (and then only in such manner, on such terms and in such amount, whether as to the whole or in part, as) [Sperry] and [Israel] shall so agree in writing or, in default of such agreement, this Tribunal or a Court in the State of New York or Federal Court in the United States of America shall finally so determine.
>
> 3. [Sperry] and [Israel] shall not permit the Escrow Account to become subject to any lien or incumbrance without the leave of this Tribunal or of a Court in the State of New York or Federal Court in the United States of America.
>
> . . . .
>
> 6. Any dispute or difference with respect to the terms of this order shall be promptly referred to this Tribunal for decision by the arbitrators.
>
> 7. This Tribunal reserves for further consideration upon the application of either par-

This action was promptly reported to Judge John M. Cannella, before whom the parties argued the motions to vacate or confirm Sperry's attachment. Sperry stated that it would move for an order confirming the arbitrators' Award, and that if the Award were confirmed, the attachment would become "essentially moot and unnecessary." (Transcript at 3.) On February 10 Judge Cannella vacated the attachment on the ground "that the attachment [was] unnecessary to the security of [Sperry]." N.Y. Civ. Prac. Law § 6223(a) (McKinney 1980); see Fed. R. Civ. P. 64 (law of forum state applicable to attachment); note 1, supra. Judge Cannella also stayed Israel "from taking any further action to collect the proceeds of [the] letter of credit . . . or to remove the proceeds resulting from any payment of that letter of credit from their present location at Citibank" pending a hearing on Sperry's motion to confirm the arbitrators' award. (Order To Show Cause dated February 10, 1982, at 2.)

Sperry's motion to confirm the Award was heard before Judge Pollack on February 18, and was opposed by Israel principally on the ground that the Award was inconsistent with our decision in Sperry I, since the arbitrators allegedly had granted substantially the same relief Israel claimed we had held impermissible. Judge Pollack rejected all of Israel's arguments [3] in a reasoned opinion and confirmed the award.[4] On this appeal, Israel renews its contention that our decision in Sperry I bars the arbitrators' Award. We disagree and affirm the order of the district court.

## DISCUSSION

It is beyond cavil that the scope of the district court's review of an arbitration award is limited. Under 9 U.S.C. § 9 (1976), "the court must grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10 and 11 (1976)]." Section 10 permits the court to vacate an award only in specific situations, such as "[w]here the award was procured by corruption, fraud, or undue means," § 10(a); "[w]here there was evident partiality or corruption in the arbitrators," § 10(b); "[w]here the arbitrators were guilty of [certain types of] misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced," § 10(c); or "[w]here the arbitrators exceeded their powers," or failed to make "a mutual, final, and definite award upon the subject matter submitted," § 10(d).[5] In addition, an award may be set aside on "the

ty all other claims and issues arising under or in connection with [Sperry's] motion.
  8.  This order shall constitute an Award of the arbitrators and either party is at liberty to apply forthwith to the United States District Court for the Southern District of New York for confirmation and/or enforcement thereof.

3.  Israel also contended that the Award was an interim decision not ripe for confirmation, *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 413 15 (2d Cir. 1980), and that the Award was tantamount to a prejudgment attachment of Israel's property which is made immune from attachment by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1609 (1976). On this appeal Israel has abandoned its prematurity argument, which had been rejected by Judge Pollack because (a) the Award itself stated that either party could seek confirmation, *see* note 2, *supra,* ¶ 8, indicating that it was a final decision as to the severable issues regarding the letter of credit, *see Moyer v. Van-Dye-Way Corp.,* 126 F.2d 339, 341 (3d Cir. 1942); *Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.,* 454 F.Supp. 368, 372-73

(S.D.N.Y. 1978), and (b) the Contract provides that any arbitration award "shall be deemed final and may be enforced" (Contract ¶ 45). Israel renews before us its FSIA contentions, which Judge Pollack had rejected on the grounds that the FSIA does not apply to an attachment obtained for a purpose other than securing jurisdiction over the foreign sovereign, and that in any event Israel had contractually waived any such FSIA protection. We reject Israel's FSIA argument for the reasons stated in note 7, *infra.*

4.  On March 16, 1982, a panel of this Court granted Israel's motion for a stay of the district court's order on the condition that, pending disposition of the appeal, Israel hold the proceeds of the letter of credit in a certificate of deposit at Citibank.

5.  Section 11 permits the court to modify or correct an award under certain circumstances. Neither party to the present case seeks to have the Award modified or corrected.

nonstatutory ground of 'manifest disregard' of the law," *Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978), but "this presuppose[s] 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law,'" *id.* (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir. 1961)).[6]

In the present case Israel argues that the arbitrators exceeded their powers, in violation of § 10(d), and that the Award was made in manifest disregard of the law. Israel bases these contentions on our decision in *Sperry I,* vacating the preliminary injunction issued by the district court and issuing our mandate promptly, which it construes as having

> *established* (a) that, as a matter of law, Sperry was not entitled to any restraint for any period of time on *Israel's right to the $15 million represented by the letter of credit,* and (b) *that Israel should have the immediate right to those funds* without having to relitigate the issue before the Arbitrators.

(Israel's Brief in No. 82–7181, at 8; emphasis in original; other original emphasis omitted.) On this view of *Sperry I,* Israel argues that the arbitrators were barred from prohibiting Israel from drawing down the letter of credit, and that in making the Award the arbitrators exceeded their powers and manifestly disregarded such principles as res judicata, collateral estoppel, and law of the case. Israel's attack on the Award as violative of *Sperry I* must fail, however, for Israel has rather badly misstated our decision.

In *Sperry I* we reiterated the standard criteria that govern the district courts' granting of preliminary injunctions, *see Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (per curiam), and ruled that Sperry had failed to prove the likelihood of irreparable injury required to obtain such relief, because the only potential harm it had shown was strictly monetary. *Sperry I,* 670 F.2d at 11–13. This was the only ground of our decision. Nowhere did we state that Israel had a right to the funds or suggest that Sperry had breached the Contract in such a way as to give Israel the right to draw down the letter of credit. Indeed, we expressly declined to state a view as to such issues as Sperry's likelihood of prevailing on the merits and the seriousness of the dispute as to the merits of Sperry's claim. *See id.* at 11 n. 4. And the question of what powers the arbitrators might have to interpret the Contract or to rule in any way on the propriety of any certification Israel might make was not before us. To the extent, therefore, that Israel's contention that the arbitrators exceeded their powers or manifestly disregarded the law depends on the proposition that the Award was somehow foreclosed by *Sperry I,* it fails because of Israel's false premise.[7]

---

**6.** Paragraph 45 of the Contract requires the arbitrators to "interpret the contract in accordance with the substantive laws of the State of New York," and ¶ 62 provides that the Contract "shall be interpreted, and the legal rights of the parties ... shall be determined, in accordance with the laws [of the State of New York]." Under New York law the power of a court to vacate an arbitrator's award is no greater than the power of a federal court under 9 U.S.C. §§ 9 and 10. Section 7511(b)(1) of the New York Civil Practice Law and Rules provides as follows:

(b) Grounds for vacating.
1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

(i) corruption, fraud or misconduct in procuring the award; or
(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or
(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or
(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

**7.** Israel's contention that the Award showed a manifest disregard for the law because it constituted a prejudgment attachment of Israel's

Nor do we find merit in Israel's contention that under New York law the arbitrators had no power to prevent Israel's sole possession of proceeds of the letter of credit pending a decision on the merits of the contractual claims and counterclaims. Preliminarily, we note that, "in keeping with the practice that is customary for arbitration under the [American Arbitration] Association's Rules" (Israel's Brief in No. 82–7181, at 14), the arbitrators gave no explanation for the Award. We are thus left to theorize as to the basis of the Award, and New York law requires that all reasonable efforts be made to find a ground on which to sustain it. *See Moyer v. Van-Dye-Way Corp.*, 126 F.2d 339, 341 (3d Cir. 1942) (applying New York law); *Fudickar v. Guardian Mutual Life Insurance Co.*, 62 N.Y. 392, 401 (1875) ("It is a settled principle governing this subject, and which ought never to be lost sight of, that all reasonable intendments and presumptions are indulged in support of awards."). One quite reasonable explanation of the Award comes quickly to mind: that is, that the arbitrators' view was that any breach of the Contract by Sperry had not been so "clear and substantial" (Contract ¶ 59) as to allow Israel in good faith to draw down the letter of credit, and that any breach of the Contract by Israel was not so egregious as to relieve Sperry of its contractual obligation to provide security for its own performance of the Contract. We have been cited to no principle of law, from New York or elsewhere, preventing the arbitrators in such circumstances from ruling that the $15 million be held in the names of both parties until the contract disputes are determined.

Rather, New York law gives arbitrators substantial power to fashion remedies that they believe will do justice between the parties. Thus, in *Sprinzen v. Nomberg*, 46 N.Y.2d 623, 629, 415 N.Y.S.2d 974, 389 N.E.2d 456 (1979), the New York Court of Appeals stated as follows:

An arbitrator's paramount responsibility is to reach an equitable result, and the

courts will not assume the role of overseers to mold the award to conform to their sense of justice. Thus, an arbitrator's award will not be vacated for errors of law and fact committed by the arbitrator . . . .

Under New York law arbitrators have power to fashion relief that a court might not properly grant. In *Rochester City School District v. Rochester Teachers Association*, 41 N.Y.2d 578, 394 N.Y.S.2d 179, 362 N.E.2d 977 (1977), the court reversed the vacation of an arbitration award that ordered the petitioner school district to grant sabbaticals to certain teachers, stating as follows:

In the final analysis "Arbitrators may do justice" and the award may well reflect the spirit rather than the letter of the agreement . . . . Thus courts may not set aside an award because they feel that the arbitrator's interpretation disregards the apparent, or even the plain, meaning of the words or resulted from a misapplication of settled legal principles. In other words a court may not vacate an award because the arbitrator has exceeded the power the court would have, or would have had if the parties had chosen to litigate, rather than to arbitrate the dispute. Those who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law.

*Id.* at 582, 394 N.Y.S.2d 179, 362 N.E.2d 977 (citation omitted). *See also Sprinzen v. Nomberg, supra,* 46 N.Y.2d at 632, 415 N.Y.S.2d 974, 389 N.E.2d 456 (expressing doubt as to whether court would have enforced restrictive covenant at issue, but stating that courts will not "second-guess" arbitrator's conclusions); *Lentine v. Fundaro,* 29 N.Y.2d 382, 328 N.Y.S.2d 418, 278 N.E.2d 633 (1972) (arbitrators permitted to order unequal distribution of property despite contractual provision requiring equal distribution).

property, from which Israel is immune under the FSIA, 28 U.S.C. § 1609 (1976), is also untenable, because the arbitrators' award is an *in*

*personam* order, not an attachment order of the sort forbidden by § 1609.

In sum, *Sperry I* did not foreclose the arbitrators' Award, and we are aware of no provision of law contravened by the Award. Accordingly, we concur in the district court's ruling that Israel has failed to advance any valid basis for denying Sperry's motion to confirm the Award.

## CONCLUSION

The orders appealed from are affirmed. Sperry may recover its taxable costs from Israel in No. 82–7181. Israel may recover its taxable costs from Sperry in No. 82–7121.